

# THE ATTORNEY GENERAL

## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN 11, TEXAS

November 30, 1951

Hon. C. H. Cavness
State Auditor
Austin, Texas

Opinion No. V-1361

Re: Several questions concerning
the disposition of soil conser-
vation district funds under
House Bill 97, Acts 51st Leg.,
R.S. 1949, and House Bill 190,
Acts 52nd Leg., R.S. 1951.

Dear Sir:

The first of the questions which you have submitted
for our consideration reads as follows:

"1. Should the total amount to be repaid the
State General Revenue Fund by each District as pro-
vided in Section 5, House Bill No. 190, 52nd Legisla-
ture, be construed to be the total sum of money paid
to the District as provided for in both House Bill No.
97 of the 51st Legislature, R.S., and House Bill 190
of the 52nd Legislature, or will it be the unexpended
sum reappropriated to the District only by House Bill
No. 190 of the 52nd Legislature, R.S.?"

In connection with this question, you submit the fol-
lowing:

"In regard to question No. 1, herein, the State
Soil Conservation Board has advised the various State
Soil Conservation Districts' Boards of Supervisors
that the total amount each District will be required to
repay will be the amount of the unexpended balance at
August 31st, 1951, that is reappropriated by the provi-
sions of House Bill No. 190.

"On page 2 of your Opinion No. V-1197 addressed
to Governor Allan Shivers, you have stated in part:

" 'It is our opinion that House Bill No. 190, if it
becomes law, would be valid; that the provisions there-
of are in pari materia with the provisions of House Bill
No. 97; and that both Acts should be construed together
to make a harmonious whole.'

"In our audits of the various districts' accounts and records, we have found a considerable variation between the Districts' unexpended balances that will result in a relatively small amount being repaid by some Districts, whereas other Districts will be required to repay a considerable portion or all of the money they have received from the State, if they pay only the amount appropriated to them by House Bill No. 190. On the other hand, if Section 5 of House Bill No. 190 applies to the amount appropriated by both House Bill No. 97, 51st Legislature, and House Bill No. 190, 52nd Legislature, all Districts would be required to ultimately repay the total amount that has been appropriated to them."

Sections 1 and 2 of House Bill 190, Acts 52nd Leg., R.S. 1951, ch. 497, p. 1206, read as follows:

"Section 1. The unexpended balances of all sums appropriated to and granted the several soil conservation districts of Texas for the fiscal year ending August 31, 1950, and for the fiscal year ending August 31, 1951, are hereby reappropriated and granted to such soil conservation districts. A soil conservation district shall be eligible to receive grants for each period of the biennium after it has been duly organized and a Certificate of Organization for the district has been approved and signed by the Secretary of State. All grants to soil conservation districts shall be made by the State Soil Conservation Board based on the Board's determination of equity and need of the district applying for the grant.

"Sec. 2. Approval of all grants of assistance to soil conservation districts as provided in this Act shall be certified to the State Comptroller of Public Accounts by the State Soil Conservation Board. Such certification or approval by the State Soil Conservation Board, presented to the Comptroller, shall be sufficient authority for the Comptroller to issue his warrants against any appropriation made for grants to soil conservation districts and shall be also sufficient authority for the State Treasurer to honor payment of such warrants.

" . . ."

Section 5 of House Bill 190 reads, in part, as follows:

"  . . .  It is further provided that each district receiving funds under this Act shall pay five per cent (5%) of any sums received as rental payments on equipment or machinery under lease to the State Treasury for deposit in the General Fund, until the funds received by a district under this Act shall have been repaid in full."

From your statement in connection with your first question, it is obvious that the State Soil Conservation Board interprets Section 1 of House Bill 190 as reappropriating the unexpended balances of State appropriated funds previously allocated to individual soil conservation districts directly to the districts having such unexpended balances on hand at the end of the past biennium. We are in accord with this interpretation. However, such unexpended balance may or may not be the total amount which a district will be called upon to repay under Section 5. There remained in the State Treasury at the end of the past biennium an unexpended balance of the appropriation previously made to the several soil conservation districts by House Bill 97, Acts 51st Leg., R.S. 1949, ch. 540, p. 1000. This unexpended balance was likewise reappropriated and granted by House Bill 190 for allocation during the biennium to the various districts by the State Board as provided in Sections 1 and 2 above quoted. Such grants when received by the districts will unquestionably be funds received "under this Act" and must necessarily be included in ascertaining the total to be repaid under Section 5.

We do not think that State appropriated funds received by individual districts under the provisions of House Bill 97 but expended prior to the end of the past biennium should be included in determining the amount to be repaid under Section 5. Only funds received "under this Act" are required to be repaid. Funds expended prior to the end of the last biennium did not constitute any part of the "unexpended balances" which were reappropriated by House Bill 190. In addition to the excerpt which you quote from Opinion V-1197 (1951), we call your attention to these additional portions of Opinion V-1197:

"The caption of House Bill No. 190 states that it is 'an Act amending House Bill No. 97, Acts of the Fifty-first Legislature, Regular Session, 1949. . . .' The body of the bill does not state that it is amending said House Bill, and in reality does not do so except by necessary implication and then only as to certain provisions of House Bill No. 97, Acts 51st Leg., R.S. 1949, ch. 540, p. 1000, that are in conflict with the provisions of House Bill No. 190, Acts 52nd Leg., R.S. 1951.

"It is our opinion that there is no fatal conflict between the caption and the body of House Bill 190. We have carefully examined the caption of House Bill No. 190 in connection with the body of the bill and have concluded that the Act constitutes a complete bill within itself and that the caption is sufficiently broad to cover the various provisions contained in the body of the bill. The portion of the caption of House Bill No. 190 which states that it is amending House Bill No. 97 should be rejected as surplusage. 1 Sutherland on Statutory Construction (3rd Ed. 1943) 328."

Viewing House Bill 190 as a complete bill within itself rather than as an amendatory act, we do not think that funds received "under this Act" can be properly construed to embrace the sums received and expended under the provisions of House Bill 97, a prior and entirely different act of the Legislature. It is true that some districts will, as pointed out by you, be required to repay a greater proportion of the State funds which they have received than will others. Nevertheless, under our interpretation of Section 5, the requirement for repayment operates prospectively only, rather than retroactively. Its fairness lies in the fact that it is imposed with full notice; its practicality, in the fact that, being foreseen, it may be provided for.

Our answer to your first question precludes consideration of your second, which is predicated on the assumption that Section 5 of House Bill 190 requires repayment by districts of all funds received under House Bill 97 and House Bill 190.

Your third question reads as follows:

"If a District at August 31st, 1953, has on hand any part of the sums appropriated by House Bill No. 190 of the 52nd Legislature, will such unexpended balance be required to be refunded to the General Revenue Fund at that time?"

In replying to your first question, we pointed out that the unexpended balances of funds which had been allocated to districts under House Bill 97 were included in the reappropriation made by House Bill 190 of "the unexpended balances of all sums appropriated to and granted the several soil conservation districts of Texas for the fiscal year ending August 31, 1950, and for the fiscal year ending August 31, 1951 . . ." Both these unexpended balances and all other funds which may be granted to the individual districts as provided by House Bill 190 remain a part of the appropriation made by House Bill 190 unless and until they are properly expended. However, such funds as are not expended at

the end of the current biennium will revert to the General Revenue Fund. This is so for the reason that under Section 6 of Article VIII of the Constitution of Texas no appropriation may be made for a longer term than two years. Therefore, at the end of the two-year period the appropriation becomes ineffective; and any balance remaining therein must necessarily lapse. Att'y Gen. Ops. 2941 (1940) and V-316 (1947).

We next quote your fourth question and remarks in connection therewith:

"Will the five per cent (5%) of any sums received as rental payments on equipment or machinery, as provided in Section 5 of House Bill No. 190, 52nd Legislature, apply to District-owned equipment operated by the District as well as to such equipment leased out to the landowners?

"With reference to question No. 4, we have found that some equipment will be operated by employees of the District and the landowner charged an agreed sum, whereas other equipment will be operated by the land-owner who will pay rental for the use of it.

"From a practical standpoint, if the salaries or wages paid the District employees during the performance of the work were deducted from the total charges for it, the resulting balance would correspond approximately to the rental charges made for that type of equipment operated by the landowner."

Section 5 of House Bill 190 reads as follows:

"To carry out the purposes of the soil conservation district program as is provided in the State Soil Conservation Law, supervisors may acquire by lease or purchase machinery and equipment and operate such machinery or equipment or may furnish same under lease or rental agreement at prices being currently charged for such services; provided, however, that the charge in any particular project shall never be less than the actual cost to the particular district for reasonable rental, labor, maintenance, depreciation and replacement of equipment. It is further provided that each district receiving funds under this Act shall pay five per cent (5%) of any sums received as rental payments on equipment or machinery under lease to the State Treasury for deposit in the General Fund, until the funds received by a district under this Act shall have been repaid in full."

This section clearly contemplates two types of operations. In some instances the district will operate the machinery and equipment, procuring the labor necessary for such operations, and in other cases the machinery or equipment will be leased or rented to individual landowners who will operate the equipment themselves or otherwise supply the necessary labor for such operations. It is true that if the salaries or wages paid employees or laborers secured by the district for performing the operations were deducted from the total job charge for a project, the balance might be compared to a rental charge for the equipment. However, in such cases the agreement between the landowner and the district would constitute a contract for the entire job or project. The consideration or price paid by the landowner would not, in either legal or common parlance, be termed a rental payment. Since the Legislature has expressly limited the sums from which five per cent is to be taken to "sums received as rental payments on machinery or equipment under lease," we are of the opinion that five per cent should not be deducted from sums received for operations conducted by the district.

## SUMMARY

The total amount required to be paid to the General Revenue Fund under Section 5, House Bill 190, Acts 52nd Leg., R.S. 1951, ch. 497, p. 1206, is the amount of the soil conservation district's unexpended balance of State appropriated funds which was on hand at the end of the past biennium, plus the amount of any additional State funds which may be granted the district during the current biennium by virtue of House Bill 190. Any unexpended balance of sums appropriated and granted to a district under House Bill 190 will revert to the General Revenue Fund August 31, 1953. Tex. Const. Art. VIII, Sec. 6. The requirement that five per cent of sums received as rental payments on equipment or machinery under lease shall be paid to the State Treasury does not apply to sums paid to districts by the landowner for projects conducted by the district.

APPROVED:

W. V. Geppert
Taxation Division

Everett Hutchinson
Executive Assistant

Charles D. Mathews
First Assistant

MMC/mwb

Yours very truly,

PRICE DANIEL
Attorney General

By _Marietta McGregor Creel_
Mrs. Marietta McGregor Creel
Assistant